

February 7, 2011

<u>Via Electronic Mail Delivery & U. S. Mail Delivery</u>

Patrick Smith, Acting Commissioner
State of Tennessee
Department of Education
6th Floor, Andrew Johnson Tower
710 James Robertson Parkway
Nashville, Tennessee  37243-0375

Dear Commissioner Smith:

We are in receipt of your February 1, 2011 correspondence regarding the requirement of T.C.A. § 49-5-203 that the Commissioner determine that the "rights and privileges" protected by said statute are not impaired, interrupted or diminished. We wish to advise you that the two affected school districts have begun meeting about the preparation of a plan to submit to you. However, during the course of the meetings it has become clear to both parties that it will literally take months to even assimilate the information that will be needed to put a plan together for your consideration. It appears to us that the 3 year time frame outlined in SB 25 is a more realistic deadline for preparing a proper and appropriate plan.

As you well know, nonetheless it is especially important to note that there is major national focus on the Memphis Human Capital Plan: Teacher Effectiveness Initiative (TEI) that needs undeterred and undistracted support moving forward. Good progress is being made on the TEI work in the Memphis City Schools, and it must not be impeded. Major milestones and stock-take goals must be met in order for funding to be continued by the grantor (Bill and Melinda

**EXHIBIT**
4

**Letter to Commissioner Smith**
**February 7, 2011**                                                                                     Page 2

Gates Foundation). The Memphis reform work served as the foundation for the State's Race to the Top application and subsequent plan of action.

This will obviously be the largest transfer of administration in this State's history. The issues involved in the transfer are going to be substantially more complicated than in any other transfer of administration. Some of the most significant issues of which you may not be aware are as follows:

1) MCS has 6 collective bargaining agreements covering many categories of employees, including but not limited to teachers;

2) MCS has approximately 15,000 employees who would be affected by the transfer;

3) The textbooks between the systems differ;

4) MCS outsources its student transportation; SCS owns buses and employs bus drivers;

5) MCS employs its own custodians (who are covered by a collective bargaining agreement); SCS outsources its custodial needs and products;

6) Employee benefits differ between the systems;

7) Payroll systems differ;

8) HR management differs;

9) State reporting software differs between the systems;

10) MCS students use PC's; SCS students use Mac's;

11) MCS has several charter schools (it is unclear as to the legal responsibility SCS will have to honor those charter contracts at this time);

12) MCS has optional schools; SCS has none;

13) The policies and procedures for students and employees differ between the systems;

Letter to Commissioner Smith
February 7, 2011                                                                 Page 3

14) We do not know what the effect of the dissolution of the MCS school system will have on MCS grants;

15) Vendor contracts (it is unclear as to whether contracts will/can be voided, whether there is duplication in contracts, and which contracts are essential to the operation of the combined school systems);

16) Delivery of Special Education services differs between the systems; in that same vein, MCS employs its own nursing staff for special needs students while SCS outsources its nursing services for special needs students.

These are just the issues of which we are aware at this time, without having had the benefit of having time to properly review all the issues that may face the systems if the transfer of administration occurs. For example, during the City of Covington transfer of administration, Tipton County discovered that with the transfer of property from the City to the County School District the County would become responsible for bringing buildings up to code standards. Although we are aware that T.C.A. § 49-5-203 deals directly with the Commissioner's determination that teacher's "rights and privileges" are not impaired, interrupted or diminished, we believe it is important for the Commissioner to have a clear picture of the plethora of issues that will both directly and indirectly affect teachers, students and their families in this unprecedented transfer of over 100,000 students and the employees associated therewith.

As you are aware, the Memphis City Council has taken the position that a public referendum is unnecessary to effectuate the transfer of administration of MCS to the SCBE. We have been advised by counsel that although the dissolution of the Memphis City Schools' Charter may in fact have caused MCS to be "out of business", the act of the Memphis City Council does not effectuate a transfer of the administration of MCS to the SCBE; i.e., a referendum would be required to effectuate such a transfer. If we are correct in our analysis or if arguendo, the transfer of administration is effective immediately or if a transfer of administration became effective on March 9, 2011 (the day after the election), the SCBE cannot assure you that the "rights and privileges" of the teachers of MCS or any of the MCS employees can be addressed in the short-term, i.e., with no planning. Additionally, and even more importantly, under such a scenario, the SCBE cannot attest that the educational needs of the students of MCS will be properly addressed in the short-term, i.e., with no planning. As you will recall, in the City of Covington transfer the Tipton County Commission had to raise taxes in order to ensure that the Tipton County Board of Education would have a sufficient budget to fully fund the costs associated with the transfer, including but not limited to the costs directly associated with ensuring that the rights and privileges of teachers were not impaired, interrupted or diminished.

Letter to Commissioner Smith
February 7, 2011                                                                                          Page 4

With all the changes that are occurring daily we are extremely concerned about how the interests of the MCS students and employees will be addressed in the short-term if the SCBE becomes immediately responsible for the administration of MCS. We greatly appreciate your advice about how to proceed, but at this point, we respectfully must advise you that it is impossible to comply with your request that we provide you with a plan for the protection of the rights of teachers by February 15, 2011, and a more comprehensive overall transition plan by March 1, 2011. We look forward to hearing from you.

Sincerely,


_____                          _____
Dr. Kriner Cash, Superintendent                    John S. Aitken, Superintendent
Memphis City Schools                               Shelby County Board of Education



cc:    SCS General Counsel, Valerie Speakman
       MCS General Counsel, Dorsey Hopson