**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **THE BOARD OF EDUCATION OF** | ) | |
| **SHELBY COUNTY, TENNESSEE,** | ) | |
| | ) | |
| **Plaintiff, Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:11-cv-02101-SHM-cgc** |
| | ) | |
| **THE MEMPHIS CITY BOARD OF** | ) | |
| **EDUCATION,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

| | |
|---|---|
| **THE BOARD OF COUNTY** | ) |
| **COMMISSIONERS OF SHELBY COUNTY,** | ) |
| | ) |
| **Third-Party Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ROBERT E. COOPER, JR., in his official** | ) |
| **capacity as Attorney General of the State of** | ) |
| **Tennessee,** *et al.*, | ) |
| | ) |
| **Third Party Defendants.** | ) |

**SUPPLEMENTAL ORDER GRANTING THIRD-PARTY PLAINTIFF'S MOTION TO COMPEL PRODUCTION FROM STATE DEFENDANTS**

### I. Introduction

Before the Court is Third Party Plaintiff, The Board of County Commissioners of Shelby County, Tennessee's ("County Commission") Motion to Compel Production (Docket Entry "D.E." #442) pursuant to Rule 37 of the Federal Rules of Civil Procedure from the following Defendants:

Robert E. Cooper, Jr., Attorney General for the State of Tennessee; Tre Hargett, Secretary of State for the State of Tennessee; Mark Goins, Coordinator of Elections for the Tennessee Department of State; The Tennessee Department of State, Division of Elections; and, Kevin Huffman, Commissioner of the Tennessee Department of Education (collectively "State Defendants"). The instant motion was referred to the United States Magistrate Judge for determination. (D.E. #446).

On November 30, 2012, the Magistrate Judge issued an Order Granting the County Commission's Motion to Compel Production (D.E. #461). The Magistrate Judge noted that it did not appear that State Defendants had filed a Response to the Motion and that failure to file a response could be grounds for granting the motion. However, rather than granting the Motion on that basis, the Magistrate Judge considered the merits of the County Commission's Motion. Ultimately, the Magistrate Judge concluded that the Motion should be granted.

On December 5, 2012, State Defendants filed an Appeal of the Magistrate Judge's Order. State Defendants assert that they had timely filed a Notice that contained their Response in Opposition to the Motion on November 21, 2012 (D.E. #453). To ensure that the State Defendant's arguments have been throughly considered, the Magistrate Judge has reviewed the Response and will address the issues raised therein in this Supplemental Order to the November 30, 2012 Order.[1]

**II. Analysis**

*A. Attorney General's "Control" Over Requested Documents*

In the State Defendant's Response, they assert that the Attorney General does not have

---

[1] The Magistrate Judge has already set forth the substance of the County Commission's Second Set of Requests for Production of Documents and Things ("Second Set of Requests") and the State Defendant's grounds for opposition in its November 30, 2012 Order.

"control" over the documents requested from the Tennessee General Assembly.[2] However, the State Defendants have not cited any legal basis for the asserted lack of control over these documents. The Court remains persuaded by the reasoning in its November 30, 2012 Order that, absent any explicit provision to the contrary, the Attorney General, who is State Defendants' legal representative under Tennessee law, must be deemed to have such control to carry out the broad statutorily mandated requirements of such representation, including compliance with discovery.

The State Defendants raised a concern that this Court should not follow the County Commission's reasoning that other courts, namely in *John B. v. Goetz*, No. 3:98-0168, 2010 WL 8754110, at *103 (M.D.Tenn. Jan. 28, 2010), have ordered precisely the same discovery. The Magistrate Judge's November 30, 2012 Order did not base its reasoning on the Board's assertion that the *Goetz* court's ruling necessarily dictate that disclosure is required in this case.[3] However, while the requests at issue in *Goetz* pertained to the Governor of the State of Tennessee and the requests at issue in the instant motion pertain to the General Assembly, the case before this Court is analogous to a significant extent. In *Goetz*, the United States District Court for the Middle District of Tennessee reasoned that, absent a citation of legal authority to the contrary, the Governor, by and through his legal representatives, was not excluded from complying with discovery. *Id.* The *Goetz* court found that any contrary conclusion would run counter to the Supreme Court's principle that "there is a general duty to give what testimony one is capable of giving." *Id.* (citing *Jaffee v.*

---

[2] Although the County Commission argued in its Motion that State Defendants may oppose discovery on the grounds that the Tennessee General Assembly is not a "named defendant" in this litigation, State Defendants' Response does not argue this issue.

[3] The Magistrate Judge cited *Goetz* only for its explanation of "control" under Rule 34(a)(1). (Nov. 30, 2012 Order at 5).

*Redmond*, 518 U.S. 1, 9 (1996)). Here, the General Assembly, by and through its legal representative, must comply with discovery absent legal authority to the contrary. The State Defendants' argument that the Governor's office's duties in the discovery process are distinguishable from a ninety-nine-member House and thirty-three member Senate with separate and individually elected members throughout the State is not persuasive. Merely because the task may be more onerous[4] does not mean that it is not required under the Federal Rules of Civil Procedure.

### B. Speech or Debate Clause

The Court's November 30, 2012 Order concluded that the Speech or Debate Clause of the United States Constitution, Article I, Section 6, does not apply to state legislators. The State Defendants' Response agrees with this conclusion. Thus, the only issues raised in the State Defendants' Response are as follows: (1) whether the Speech or Debate Clause of the Tennessee Constitution, Article II, Section 13, is a permissible ground for asserting privilege to the County Commission's Second Set of Requests; or, (2) whether federal common law contains a similar privilege for state legislators.

After reviewing the State Defendants' position, the Court does not find any basis to alter or amend its conclusion in its November 30, 2012 Order with respect to the applicability of the Tennessee Speech or Debate Clause in federal court. Rule 501 of the Federal Rules of Evidence provides that federal law of privilege applies in federal court. Fed. R. Evid. 501. State Defendants' have conceded that the United States Constitution's Speech or Debate clause is inapplicable here.

---

[4] The State Defendants similarly assert that the General Assembly retains "voluminous amounts" of information, much of which may be privileged, which would necessitate an "enormous privilege log." However, the issue of undue burden does not appear to have been raised by State Defendants as an objection to the requests at issue, nor has it been briefed by the parties.

Further, State Defendants have not provided any authority for the applicability of the Tennessee Constitution's Speech or Debate Clause in federal court. While State Defendants discuss at length that the *scope* of the Tennessee constitutional privilege has been held to be as broad as the federal constitutional privilege, this is distinct from the *applicability* of the Tennessee constitutional privilege. Ultimately, the fact that the Tennessee constitutional privilege is "almost identical" to the federal privilege does not render it to be applicable in federal court. *Mayhew v. Wilder*, 46 S.W.3d 760, 774 (Tenn. Ct. App. 2001). The United States Supreme Court has explicitly so held in *United States v. Gillock*, 445 U.S. 360, 368 (1980) (concluding that the fact that the Tennessee Constitution's Speech or Debate Clause could be asserted in state court does not "compel an analogous privilege" in federal court).[5]

State Defendants' Response also suggest that the federal common law provides a basis for a speech or debate privilege for state legislators. The *Gillock* court has also considered this question and explicitly determined that such a privilege is not "either indelibly ensconced in our common law or an imperative of federalism." 445 U.S. at 367. The *Gillock* court made this determination based upon the language and legislative history of Rule 501. *Id.* at 366-368. The *Gillock* court also noted that, should Congress desire to enact such a privilege, it would have done so, but it has not. *Id.* at 366-368. Therefore, the Magistrate Judge concludes that neither the Tennessee Speech or Debate

---

[5] State Defendants also assert that *Gillock* involved a criminal prosecution rather than a civil action and, thus, his acts were beyond the scope of the privilege because criminal offenses could not possibly constitute legitimate legislative acts. While it may be true the determination of what acts fall within the scope of the privilege varies from a civil case to a criminal case, this is a secondary question to what privilege applies in the first place. The Court is not aware of any basis for a distinction under Rule 501 between civil and criminal cases. Thus, this Court finds the *Gillock* court's conclusion that federal law of privilege applies in federal court to be determinative of the issue.

Clause nor federal common law provides a privilege for the Tennessee General Assembly to assert in opposition to the County Commission's Second Set of Requests.[6]

### C. *Separation-of-Powers Doctrine*

Next, the State Defendants assert that the Second Set of Requests are unreasonable for two reasons under the separation-of-powers doctrine. First, the State Defendants argue as follows: "In light of the separate, co-equal, and co-exclusive roles of the three governmental branches, prudence dictates that where the validity of a statute is in question, any judicial inquiry into the conduct and motives attributable to members of the General Assembly in the enactment of the statute is forbidden." Second, the State Defendants argue that the Attorney General cannot comply because creating and reviewing privileged and confidential documents of the General Assembly violates the separation-of-powers doctrine. Although the County Commission's Motion discussed briefly addressed separation-of-powers concerns with respect to the issues, the Court did not specifically address the State Defendants' two specific questions in its November 30, 2012 Order. Thus, the Court will address those in this Supplemental Order.

First, as to whether a federal court may consider the constitutionality of a state legislative enactment, there is no separation-of-powers concern. As the *Gillock* court succinctly noted, "under

---

[6] State Defendants additionally argue that, if the privileged documents relating to the legislative function that the County Commission seeks to discovery are not afforded the protections of the Speech or Debate Clause, it would violate the First Amendment. State Defendants assert that, in the absence of such a protection, "legislators will be reluctant to engage in communications regarding legislation for fear that anything they say may be discovered by one challenging the constitutionality of a statute." However, State Defendants do not cite any authority that Congress's decision not to establish a privilege for state legislators violates the First Amendment. State Defendants likewise do not cite any authority for their position that permitting the discovery requested in this case would violate the First Amendment. Thus, the Court will not address these issues.

our federal structure, we do not have the struggles for power between the federal and state systems . . . ." 445 U.S. at 370. For this reason, "federal interference in the state legislative process is not on the same constitutional footing with the interference of one branch . . . in the affairs of a coequal branch." *Id.* (citing cases). As to the secondary question of whether this inquiry can specifically include the potential motivations of the state legislature, this issue will be considered with State Defendants' arguments as to whether the discovery requests are relevant or reasonably calculated to lead to the discovery of admissible evidence. *See*, *supra*, Section II.D.

Second, the State Defendants' briefly mention in their argument regarding whether the Attorney General has "control" over the requested documents that any review of privileged or confidential legislative documents by the Attorney General would be in contravention of the separation-of-powers doctrine. However, the relationship between the Attorney General and its represented parties is not a matter for this Court to determine. This Court must simply determine the scope of appropriate discovery under the Federal Rules of Civil Procedure. Thus, the Court will not further address this issue.

### D. Relevance of Discovery Requests

State Defendants further assert that the Second Set of Requests are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence under Rule 26 of the Federal Rules of Civil Procedure. As the Court has already noted, without the Second Set of Requests and the objections thereto in the record, it is impossible for the Court to know whether State Defendants raised this as a ground for their objection to the requests, as the County Commission's Motion does not reference such an objection. In any event, the Court will address the State Defendants' position regarding this objection.

The Court's November 30, 2012 Order already concluded that such discovery was relevant and reasonably calculated to lead to the discovery of admissible evidence. However, the State Defendants' raise a novel issue not previously considered by the Court. Specifically, State Defendants argue that such discovery should not be permitted because the claims in this case under the Equal Protection Clause of the Fourteenth Amendment should ultimately be analyzed under the rational basis test. State Defendants argue that evidence of legislative intent, including statements or documents outside the legislative record, are not admissible under this level of scrutiny.

As the District Court has not yet considered the claims under the Equal Protection Clause, the District Judge has not made a determination as to what level of scrutiny applies to these claims. It is not the position of the Magistrate Judge to do so, and it is not within the ambit of the Order of Reference. However, the Magistrate Judge must determine what discovery requests are reasonably calculated to lead to the discovery of admissible evidence before the eventual determination on the merits of the Equal Protection Clause claim. The Magistrate Judge must be guided the allegations in the Complaint, by the Federal Rules of Civil Procedure, and by case authority on this issue.

As a general rule, express classifications based on race must be analyzed under strict scrutiny. *Tigrett v. Cooper*, 855 F.Supp.2d 733, 750 (quoting *Johnson v. California*, 543 U.S. 499, 505 (2005)). However, if an enactment is facially neutral, which the County Commission asserts that the Municipal School Acts at issue in this case are, a court must not automatically apply strict scrutiny. *Id.* But strict scrutiny will "trigger[ed]" if the Complaint contains factual allegations of racial animus, purpose, or intent. *Id* at 752-53. The allegations, however, may not simply be "legal conclusions masquerading as factual assertions." *Id.*

In the instant case, the County Commission's Second Amended Third-Party Complaint (D.E.

#371) contains what can only be deemed as extensive factual allegations regarding its position that the enactment of the Municipal School Acts was motivated by racial animus, purpose, and intent. (Second Am. Compl. ¶¶ 64, 67-71, 105-149). The County Commission alleges at great length the demographic factors of Shelby County and the municipalities therein as well as the historical background and sequence of events preceding the decision to enact the Shelby County Municipal School Acts. (Second Am. Compl. ¶¶ 105-127).

Of specific important to the instant discovery requests, the County Commission alleges as follows: "Prior to the enactment of the Shelby County Municipal School Acts, some Shelby County citizens voiced concerns regarding suburban children becoming part of a predominantly African-American school district and/or increasing the number of African-American children in their school system." (Second Am. Compl. ¶ 128). The County Commission further alleges as follows: "[S]ome Shelby County citizens expressed concerns about allowing schools located in suburban Shelby County to be governed by the same predominantly African-American administrators and/or elected officials that operated the Memphis City School system." (Second Am. Compl. ¶ 129). The County Commission alleges that, "[u]pon information and belief, these were among the concerns to which the Tennessee legislators responded when they voted in favor of the Shelby County Municipal School Acts." (Second Am. Compl. ¶ 130). The County Commission alleges that the racial motivation and discriminatory purpose behind the enactments is "further evidenced by the General Assembly's substantial departures from several procedural and substantive norms in enacting the Shelby County Municipal School Acts," which the County Commission continues to enumerate. (Second Am. Compl. ¶ 134-144). Given these exhaustive factual allegations, the Court finds that State Defendants' arguments that the discovery is not relevant or reasonably calculated to lead to

the discovery of admissible evidence to be unpersuasive.

The Magistrate Judge also notes that the District Court has previously considered another Motion to Compel filed by the County Commission in the instant case.  On November 15, 2012, the District Court ordered that the County Commission would not be permitted discovery from the Memphis Publishing Company, which publishes *The Commercial Appeal* newspaper, of either a transcript of public comments about newspaper articles relating to the Municipal School Acts on the newspaper's website or the personal identification information of the individuals who posted the comments.  The County Commission had sought such information to attempt to establish that the passage of the Municipal School Acts was motivated at least in part by an intent to achieve a disparate racial impact.  The District Court found that these requests "concerning the opinions of the general readership of the Commercial Appeal" is not relevant in this action.  The Magistrate Judge throughly considered this ruling of the District Court as well when considering the issue in the instant motion.  However, the Magistrate Judge finds that the direct communications with the legislative branch are of a different nature than public comments on a newspaper website.  Direct communications with the legislature are reasonably calculated to lead to the potential motivating factors for enacting legislation, whereas public comments on a local newspaper website that legislators may or may not have even been aware of while making critical decisions are not.

### E.  *Deliberative Process Privilege*

The Magistrate Judge's November 30, 2012 Order addressed the County Commission's arguments as to the State Defendants' objection on the basis of the deliberative-process privilege.  The State Defendants Response did not raise any issues as to this privilege.  Thus, the Court does not find any need to reconsider its conclusions on this issue.

### III. Conclusion

Having considered the State Defendants' Response to the County Commission's Motion to Compel Production (D.E. #442), and for the reasons set forth in the Court's November 30, 2012 Order (D.E. #461) and this Order, the Court again concludes that the County Commission's Motion to Compel Production should be GRANTED.

**IT IS SO ORDERED** this 18th day of December, 2012.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE