```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

| | |
|---|---|
| BOARD OF EDUCATION OF SHELBY  ) | |
| COUNTY, TENNESSEE, et al.,    ) | |
|                               ) | |
|                               ) | |
|     Plaintiffs,               ) | |
|                               ) | |
| v.                            ) | No. 11-2101 |
|                               ) | |
| MEMPHIS CITY BOARD OF         ) | |
| EDUCATION, et al.,            ) | |
|                               ) | |
|                               ) | |
|     Defendants.               ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR APPROVAL**

Before the Court is the March 28, 2013 Motion for Approval by Defendant/Counterclaimant Board of County Commissioners of Shelby County, Tennessee (the "Shelby County Commission"). (Motion, ECF No. 503.) On March 29, 2013, Intervening Third-Party Defendants the City of Germantown, the Town of Collierville, the City of Bartlett, the City of Lakeland, the City of Millington, and the Town of Arlington (collectively, the "Municipalities") responded. (Municipalities' Resp., ECF No. 504.) On April 1, 2013, Plaintiff The Board of Education of Shelby County, Tennessee (the "School Board") responded. (School Board's Resp., ECF No. 505.) On April 12, 2013, the Shelby County Commission replied. (Shelby County Commission's

Rep., ECF No. 507-1.) On May 6, 2013, the Shelby County Commission provided additional information. (Precinct Maps, ECF No. 516-1.)

The Shelby County Commission asks the Court to approve a resolution ("Resolution 37") that would expand the School Board from seven to thirteen members. The Shelby County Commission would appoint six members to fill the newly-created positions. The Shelby County Commission also asks the Court to approve a redistricting plan for the thirteen-member School Board. For the following reasons, the Shelby County Commission's Motion is GRANTED IN PART and DENIED IN PART.

On September 28, 2011, the Court approved a consent decree (the "Consent Decree") negotiated and executed by the then parties. (Consent Decree 11, ECF No. 262.) Multiple provisions of the Consent Decree address the transfer of the administration of the Memphis City Schools to the School Board. Paragraph Two provides that, effective October 1, 2011, the Memphis City and Shelby County school systems:

> [W]ill be governed by the Shelby County Board of Education, which shall consist of twenty-three (23) members. Nine (9) of the members will be present members of the Memphis City Board of Education. Seven (7) of the members will be present members of the Shelby County Board of Education. The sixteen (16) members from the Memphis and Shelby County Boards shall serve until September 1, 2013. The remaining seven (7) members will be appointed by the Shelby County Commission. The seven (7) appointed members will be subject to election at the regularly scheduled

> county-wide election in August 2012 and shall serve staggered terms as determined by the County Commission.

(Consent Decree 11.) Paragraph Three of the Consent Decree provides that the Shelby County Commission "shall have the option of enlarging the Shelby County Board of Education and redistricting it so that the Board shall consist of not more than 13 members." (Id. 12.) Paragraph Three provides that "[n]o such enlargement or redistricting shall take effect before September 1, 2013." (Id.)

Invoking the Consent Decree, Resolution 37 seeks to expand the School Board from seven to thirteen members effective September 1, 2013. The Shelby County Commission proposes filling "the vacancies on the thirteen member Shelby County Board of Education [in newly created districts] by appointing six members thereto, for a term of not more than one year, which shall begin on September 1, 2013, and which shall expire on August 31, 2014." (Resolution 37 3, ECF No. 503-2.) Voters would elect six new members at the General Election in August 2014. (Id.) Alternatively, the Shelby County Commission proposes expanding the School Board to thirteen members who would serve at-large. (Shelby County Commission's Resp. to Election Commission 3, ECF No. 3.)

The Shelby County Commission proposes a redistricting map that divides Shelby County into thirteen substantially equal

School Board districts. The districts are based on the thirteen districts used to elect the Shelby County Commission. Any alterations were made to preserve the terms of office of the seven School Board members elected in 2012.

On April 16 and April 30, 2013, the Court held hearings and heard argument from the parties. The hearings addressed the scope of the Consent Decree, the appropriate method of expanding the School Board, if any, and the composition of the thirteen districts. The parties discussed expanding the School Board by appointment or special election, and also discussed delaying expansion until after the county-wide General Election in 2014.

On April 19, 2013, the Shelby County Election Commission (the "Election Commission") filed a statement addressing the cost and convenience of conducting a special election to fill the six positions that would be created if the School Board were expanded to thirteen members. (Election Commission Submission, ECF No. 511.) On April 26, 2013, the Shelby County Commission, the Municipalities, and the School Board responded. (Shelby County Commission's Resp. to Election Commission, ECF No. 512); (Municipalities' Resp. to Election Commission, ECF No. 513); (School Board's Resp., ECF No. 514.) On May 6, 2013, the Shelby County Commission identified the precincts that would compose the proposed School Board districts. (Shelby County

4

Commission's Submission to Election Commission); (Precinct Maps, ECF No. 516-1.)

The parties do not dispute the Shelby County Commission's authority to expand the School Board to thirteen members. They dispute the method and timing of the expansion. The parties also dispute the extent to which the Court should exercise its equitable authority.

The Shelby County Commission argues that the Consent Decree "unequivocally allows [it] to redistrict and enlarge the Shelby County School Board to no more than 13 districts." (Shelby County Commission's Resp. to Election Commission 2.) Appointing six members, the Shelby County Commission argues, would be the most cost-effective and efficient means of expansion. (Id. 2-3) (appointment is the "most appropriate, timely, and effective method to fill the vacancies that will be created by the redistricting of the Shelby County School Board as contemplated in the Consent Decree.") The Shelby County Commission opposes delaying expansion until 2014 as inconsistent with the plain language of the Consent Decree and incompatible with the parties' understanding when they executed the Consent Decree. The Shelby County Commission submits that it "is merely attempting to implement a right for which it bargained and was granted under the terms of this Court's Consent Decree in the most timely manner available." (Id.)

The Municipalities argue that the Shelby County Commission's redistricting and appointment plan would "result in some Shelby County citizens having democratically elected representatives on the Board of Education while others would not, thus violating the Equal Protection Clause." (Municipalities' Resp. to Election Commission 2.) The Municipalities rely on a theory of vote dilution, arguing that the appointment of six new School Board members diminishes the legitimacy and effectiveness of the seven School Board members who were elected in 2012. (Id. 5.) The Municipalities urge the Court to delay the expansion of the "Board of Education until August 2014, at which time the citizens of Shelby County can elect the six new school board members." (Id. 2.)

The School Board seeks to delay the expansion of the School Board until August 2014. To the extent the Shelby County Commission seeks to appoint six members, the School Board argues that the appointments would not fill "vacancies" as provided by Tennessee law. The School Board relies on Tenn. Code Ann. § 49-2-202, which provides that "[v]acancies shall be declared to exist, on account of death, resignation, or removal from the county." Because the Shelby County Commission would create the positions to be filled and would not fill vacancies created by death, resignation, or removal, the School Board argues that appointing six members would be contrary to Tennessee law. The

6

School Board also argues that appointing six members would have "the effect of disenfranchising some voters who elected their school board members by requiring, for a period of approximately one (1) year, that they be represented by appointed members of the County Commission's choosing." (School Board's Resp. to Election Commission 4-5.)

In adopting the Consent Decree, the Court relied on its "inherent equitable authority to remedy a violation of the United States Constitution." Assoc. Gen. Contractors of Am. v. Columbus, 172 F.3d 411, 417 (6th Cir. 1999); (see also Consent Decree 10) ("The proposed consent decree remedies the malapportionment within a reasonable time and is well within the Court's equitable power."). As the Sixth Circuit has stated:

> A consent decree is a strange hybrid in the law. It is both a voluntary settlement agreement which could be fully effective without judicial intervention and a final judicial order . . . plac[ing] the power and prestige of the court behind the compromise struck by the parties. Hence, a consent decree is a settlement agreement subject to continued judicial policing. Accordingly, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it or by what might have been written had the plaintiff established his factual claims and legal theories in litigation. However, a consent decree should be construed to preserve the position for which the parties bargained.

Vanguards of Cleveland v. City of Cleveland, 23 F.3d 1013, 1017 (6th Cir. 1994) (internal quotation marks and citations omitted); see also Firefighters Local Union No. 1784 v. Stotts,

7

467 U.S. 561, 574 (1984) (the "scope of a consent decree must be discerned within its four corners."); East Brooks Brooks, Inc. v. City of Memphis, 633 F.3d 459, 464 (6th Cir. 2011) (a consent decree is "essentially a settlement agreement subject to continued judicial policing.").

"Once approved, the prospective provisions of the consent decree operate as an injunction." Vanguards of Cleveland, 23 F.3d at 1018 (citation omitted). The injunctive nature of a consent decree compels the approving court to: "(1) retain jurisdiction over the decree during the term of its existence, (2) protect the integrity of the decree with its contempt powers, and (3) modify the decree if 'changed circumstances'" subvert its intended purpose." Id. (quoting Williams v. Vukovich, 720 F.2d 909, 920 (6th Cir. 1983)). Modification of a consent decree "requires 'a complete hearing and findings of fact.'" Id. at 1017 (Akers v. Ohio Dep't of Liquor Control, 902 F.2d 477, 479 (6th Cir. 1990)). "[E]ven if the consent decree does not expressly grant the district court jurisdiction to modify the decree, it is well-settled that 'courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.'" Id. (quoting Sarabia v. Toledo Police Patrolman's Ass'n, 601 F.2d 914, 917 (6th Cir. 1979)).

8

"[I]nterpretation of a consent decree is to follow the general rules prescribed in contract law." Lorain NAACP v. Lorain Bd. of Educ., 979 F.2d 1141, 1148 (6th Cir. 1992). "If the language of the decree is ambiguous, . . . the court's interpretation of its substantive commands may depart from the four corners." Dotson v. U.S. Dept. of Housing and Urban Development, 731 F.2d 313, 318 (6th Cir. 1984) (citation and internal quotation marks omitted). "Contract language is ambiguous if it is subject to two reasonable interpretations," but the "ambiguity must be patent; that is, apparent on the face of the contract." Schachner v. Blue Cross and Blue Shield of Ohio, 77 F.3d 889, 893 (6th Cir. 1996) (citations omitted). If a contract is ambiguous, extrinsic evidence is admissible to aid in interpretation. See id.

Paragraph Three of the Consent Decree does not address the method of selecting members of the expanded School Board or the time of selection. It provides that the Shelby County Commission "shall have the option of enlarging the Shelby County Board of Education and redistricting it so that the Board shall consist of not more than 13 members. No such enlargement or redistricting shall take effect before September 1, 2013." (Id. 12.) Having an "option" says nothing about how it is to be exercised. The method and timing are not provided. On its face, Paragraph Three can be interpreted to provide for

9

expansion by election or by appointment. Imposing appointment would require the Court to indulge inferences in favor of the Shelby County Commission that the text does not support.

Other provisions of the Consent Decree provide guidance. Election and appointment are expressly contemplated in different circumstances. Appointment is provided as a means of increasing the School Board to twenty-three members. (Consent Decree 11) ("The sixteen (16) members from the Memphis and Shelby County Boards shall serve until September 1, 2013. The remaining seven (7) members will be appointed by the Shelby County Commission."). Appointment is also mentioned as a means of filling "[a]ny vacancies in positions on the combined Shelby County Board of Education" before September 1, 2013. (Id. 13.) Election is mentioned in Paragraphs Two and Eight, but only as a means of requiring the election of the seven appointed members in 2012. The 2014 elections are not mentioned.

The provision for appointment and election in the Consent Decree demonstrates that appointment is not necessarily warranted. A maxim of interpretation is *expressio unius est exclusion alterius*, which means "the expression of one thing is the exclusion of another (of the same kind)." Dick Broad. Co., Inc. of Tennessee v. Oak Ridge FM, Inc., 395 S.W.3d 653, 671 (Tenn. 2013) (citing D&E Constr. Co. v. Robert J. Denley Co., 38 S.W.3d 513, 519 (Tenn. 2001)). Paragraphs Two and Three of the

10

Consent Decree address benchmarks for transferring the administration of the Memphis City Schools to the School Board and selecting its members. They are "of the same kind." Oak Ridge FM, Inc., 395 S.W.3d at 671. Expressly granting the Shelby County Commission appointment powers in Paragraph Two suggests that appointment powers were not contemplated in Paragraph Three. Appointing six new members, insofar as the Shelby County Commission advocates for that method of selection, is not the means of selection contemplated in the Consent Decree.

The Shelby County Commission argues that the Consent Decree unequivocally permits expansion to thirteen members, and that appointment "is not only contemplated by Tennessee law; it is the only effective, timely and economical way" to fill vacancies. (Shelby County Commission's Resp. 7.) The Shelby County Commission relies on Article VII, Section 2 of the Tennessee Constitution, which provides that "[v]acancies in county offices shall be filled by the County legislative body, and any person so appointed shall serve until a successor is elected at the next election occurring after the vacancy and is qualified." Tennessee Constitution Article VII, Section 2.

The Shelby County Commission correctly states the basic framework for filling vacancies under Tennessee law, but the appointments sought would fill new positions established under

11

the authority of the Consent Decree, not the "vacancies" contemplated by Article VII, Section 2. The Shelby County Commission's proposed method does not capture the highly unusual circumstances here. "Courts . . . have a duty to enforce, <u>interpret</u>, modify, and terminate their consent decrees <u>as required by circumstance</u>." <u>Waste Mgmt. of Ohio v. City of Dayton</u>, 132 F.3d 1142, 1146 (6th Cir. 1997) (emphasis added). The issue here, unlike the cases relied on by the Shelby County Commission, is not the appointment of officials to vacancies created in the ordinary course of government; it is the appointment of members to fill Commission-created positions on a newly constituted School Board, resulting in a situation in which some voters are left without elected representation during a time of critical public importance.

The Shelby County Commission's interpretation of Paragraph Three threatens to impede the purposes of the Consent Decree. Increasing the number of School Board members is an ancillary feature of the Decree; effectively combining two school systems with some 150,000 students does not hinge on the size of the School Board. One of the Court's goals in approving the Consent Decree was to further the ultimate goal of effective combination by encouraging continuity of policy made by an established, responsive, elected governing body. Expanding the School Board by appointing six unelected members at a critical time creates

12

uncertainty and potentially undermines the legitimacy of the School Board's decision making. As the Court stated at a February 14, 2012 Status Conference, "the goal . . . long-term . . . was to have the [six] members elected." (Feb. 14 2012 Tr. 23:6-8, ECF No. 503-1.) Appointing six additional members would unnecessarily dilute the School Board's responsiveness to the voters of Shelby County.

In the Court's August 8, 2011 Order (the "August 8 Order"), the Court invalidated School Board districts that violated the one-person, one-vote principle in the Equal Protection Clause of the Fourteenth Amendment. See Bd. of Educ. of Shelby Cnty., Tenn. v. Memphis City Bd. of Educ., 11-2101, 2011 WL 3444059, at *54 (W.D. Tenn. Aug. 8, 2011) ("For purposes of one-person, one-vote analysis, Memphis residents are part . . . of the relevant geopolitical entity but denied the right to vote.") (internal citations omitted). After mandating a remedy, the Court approved the Consent Decree, which provides for the appointment of seven School Board members by the Shelby County Commission. Id. at *56 ("There is a constitutional violation, and a remedy is mandated."); (Consent Decree 11.) The seven appointed School Board members faced election in 2012 and, effective September 1, 2013, seven elected members will constitute the School Board, responsible for governing the combined school system.

Permitting the appointment of seven School Board members remedied the constitutional violation "within a reasonable time and [was] within the Court's equitable power." (Id. 10.) Appointment was intended as a short-term bridge to an elected and responsive School Board, and the seven elected School Board members were expected to assume control on September 1, 2013. The circumstances that justified the appointment of seven School Board members when the Consent Decree was approved are no longer present. The transfer of the administration of the Memphis City Schools has occurred. The school year has started and, on September 1, 2013, the Shelby County Schools will be operated by an elected School Board.

The Court's concern in 2011 was that all citizens of Shelby County should have fairly apportioned representation on the School Board. That representation was essential during the transfer of administration. The transition to an elected Board was to be completed as soon as practicable. The authorities on which the Court relied and the analysis it employed were grounded in the principle of one person one vote. Elections are the essence of that principle.

The proposal made by the Shelby County Commission would be a step backward. Instead of seven elected members, the School Board would consist of thirteen members, seven elected and six unelected. Some voters who were represented by elected School

14

Board members would be represented by appointed School Board members. Other voters would continue to be represented by elected School Board members. That result would be fundamentally unfair.

In interpreting the Consent Decree, the Court's focus is advancing "the purpose of the consent decree," not advancing measures that threaten its implementation. Vanguards of Cleveland, 23 F.3d at 1018. The Court must not be swayed by "what might satisfy the purposes of one of the parties." Id. at 1017. The only interpretation of the Consent Decree consistent with the Court's understanding of the Decree, its purposes, and the constitutional violation to be remedied requires an election. The six new members of an expanded School Board must be elected.

At the hearings on April 16 and 30, 2013, the Court addressed the possibility of ordering a special election. A special election is a remedy that should only be undertaken after careful consideration of the equities. Reynolds v. Sims, 377 U.S. 533, 585 (1964); see also Dillard v. Chilton Cnty. Com'n, 452 F. Supp. 2d 1193, 1196 (M.D. Ala. 2006), vacated on other grounds by, Dillard v. Chilton County Comm'n, 495 F.3d 1324, 1329 (11th Cir. 2007). Equitable considerations include the expected cost of any election, whether the short time frame would discourage people from running, and how a special election

would affect voter turnout. Reynolds, 377 U.S. at 585 ("In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles."); Taylor v. Monroe Cnty. Bd. of Sup'rs, 421 F.2d 1038, 1042 (5th Cir. 1970) (trial courts should determine "how much time and effort would be involved in preparing for and holding a special election."); Dillard, 452 F. Supp. 2d at 1196-97.

In declining to order a special election based on alleged violations of the Voting Rights Act, the district court in Alabama succinctly stated the reasons special elections are discouraged:

> A special election can be extremely costly to a local government, and these expenses can be unduly burdensome when not anticipated in the budget. Furthermore, a special election is likely to generate fewer competitive candidates for office because the benefits of holding office for a period of time significantly shorter than a full term are slight-- especially when those officeholders are faced with the prospect of campaigning and fundraising so soon for the next election. Moreover, voter turnout in special elections is generally very low, on account of the populace being unaccustomed to an election mid-cycle and there being no other races to generate interest in the election.

Id. at 1198; see also United States v. City of Houston, 800 F. Supp. 504, 506 (S.D. Tex. 1992) ("[A]s the cost of ordering new elections may be high relative to other public priorities, a

16

jurisdiction forced into holding a special election has much less to spend on those other necessities. This cost should not be cavalierly brushed away by other branches of government, whether federal or judicial, that neither pay it nor impose the tax burden on which a remedy depends."); see also id. ("A special election [] tends to skew the process of candidate selection. Potential candidates must decide to run, and to change their personal and professional schedules dramatically, on much shorter notice than they would face in preparing for a regular election cycle.").

    The equities here weigh heavily against a special election. In addition to the traditional low voter turnout and dearth of candidates, the Election Commission estimates that a special election would cost approximately $425,000 and could not be held before December 5, 2013. (Election Commission Submission 2-3.) Conducting a special election on December 5, 2013, would require reprogramming voting software to account for redrawn precinct boundaries and sending notification to all eligible voters in compliance with Tennessee law. (Id. 3.) These obstacles need not be faced. A county-wide election is scheduled in August 2014, in approximately twelve months. "[T]he public often benefits more from a general election held later than from a special election held sooner." Dillard, 452 F. Supp. 2d at 1198. An election twelve months in the future is not too

17

distant. See Dillard, 452 F. Supp. 2d at 1198 ("Critical here is the short amount of time between the proposed special election and the next general election: even if new commissioners were to assume their seats in mid-2007, the next general election would be at most 18 months away."). The six new School Board members should be elected in August 2014.

Resolution 37 proposes "a reapportionment plan consisting of thirteen districts, with one member being elected from each district, that [the Shelby County Commission] believes is consistent with the requirements of the Constitutions of the United States and the State of Tennessee." (Resolution 37 1, ECF No. 503-2.) "The geographic area of the thirteen Districts is defined by the various voting precincts of the County of Shelby." (Id. 2.) Resolution 37 provides that the "[r]edistricting Plan for reapportioning the Districts of the Shelby County Board of Education, based on the 2010 U.S. Census Data, creating thirteen Districts" is adopted under Tennessee law and the Consent Decree. (Id.)

The Shelby County Commission has proposed district lines and precinct composition for the thirteen School Board districts. The Court has reviewed the redistricting map and the precinct assignments, including the population figures for the thirteen districts, as submitted on May 16, 2013. (ECF No. 516-1.) The proposed districts are of substantially equal

18

population, compact, contiguous, respectful of political subdivisions, and representative of the community. The Shelby County Commission's Motion for Approval of the redistricting map is GRANTED, and the proposed districts are APPROVED as shown on Exhibit A to this Order.

For the following reasons, the Shelby County Commission's Motion is GRANTED IN PART and DENIED IN PART. The Motion to approve the expansion of the School Board to thirteen members is GRANTED, effective September 1, 2014. The Motion to approve the appointment of six members to the School Board for one-year terms is DENIED. The six new positions on the School Board shall be filled by the voters at the General Election to be held in August 2014. The Motion to approve the redistricting plan is GRANTED. This Order is not intended to limit the Shelby County Commission's authority to fill vacancies on the School Board that arise through death or resignation, as provided by state law.

So ordered this <u>7th</u> day of August, 2013.

                                                 s/ Samuel H. Mays, Jr._____
                                                 SAMUEL H. MAYS, JR.
                                                 UNITED STATES DISTRICT JUDGE